

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00430-CR

GUILLERMO ORTEGA                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

## FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Guillermo Ortega of attempted capital murder of James Newport and assessed his punishment at twenty years' confinement. The trial court sentenced him accordingly. In two points, Appellant challenges the sufficiency of the evidence to support his conviction. Because the evidence is sufficient to support his conviction, we affirm the trial court's judgment.

---

[1]See Tex. R. App. P. 47.4.

## I. Summary of Facts

On May 13, 1992, Appellant and his brother Ernesto Ortega broke into and attempted to steal a car belonging to James Newport and his wife. Newport's wife woke up after hearing the sound of glass breaking and people talking. When she recognized the sound of her car starting and then stalling, she woke up Newport and told him that someone was stealing the car. Newport heard what sounded like a car starting and ran out of his apartment with a .223 caliber assault rifle. He testified that once outside, he saw that the car had been backed out of the parking space; he took a "firing stance" and told the people in the car to get out of the car. Newport testified that he was standing on the passenger side, probably about thirty or forty feet away from the car. He stated that two males got out of the vehicle on the driver's side, which was "opposite of [Newport], and began firing."

Newport saw muzzle flashes coming from the weapons held by the two men, and the flashes were close together. Then, one man ran to the left and the other ran to the right, both shooting at Newport. He continued to see muzzle flashes from both firearms. He testified that he could hear the bullets, and one bullet lodged in the apartment complex building behind where he was standing. Newport was certain that both men were firing directly at him. He returned fire, aiming at the man running to the left because the shot was better and safer. The man running to the left continued to shoot at Newport, and when the man stopped at the end of the parking lot, Newport shot him, killing him. Newport

2

testified that during the entire encounter, he feared for his life and was threatened with bodily injury or death.

After he killed that man, Newport gave chase to the second man. Halfway across the parking lot, Newport realized that he was out of ammunition and in his underwear, so he went back to his original spot. By that time, he could hear sirens, so he removed the magazine, laid down his rifle, and waited for the police.

Crime Scene Investigator Joel Stephenson examined the scene and discovered Ernesto's body. Near Ernesto's body, Stephenson found a .38 caliber revolver with two bullets discharged. This revolver was not the weapon with which Ernesto was shot. In Ernesto's pockets, Stephenson found a pair of pliers or wire cutters and what appeared to be a broken spark plug. He testified that spark plug pieces are sometimes used to break out car windows. A "dent puller" was found under Ernesto's body; dent pullers are commonly used to "defeat the vehicle ignitions."

In examining Newport's car, Stephenson noted that the driver's side window had been broken out, the steering column had been "defeated," and the dome light had been disconnected. Two fingerprints lifted from the car matched the postmortem fingerprints of Ernesto. A palm print lifted from the car's dome light cover and a fingerprint from the top of the driver's side door were identified as belonging to Appellant.

In the parking lot, Stephenson found eleven shell casings from Newport's gun. Although no shell casings connected to a third firearm were located, there were bullet tracks in the roof of Newport's car with a trajectory from the car toward the apartments. No inspection of the apartment building for gunshot damage was ever performed. Newport's wife testified to hearing three different guns firing, including two small caliber weapons and the rifle. She testified that it sounded like a war zone. Cary Gore, a neighbor, testified that he heard only three or four small caliber shots and "two rifle shots twice."

Kenya Parada, Appellant's former wife, testified at trial that shortly after Ernesto's death, before the couple was married, Appellant had told her that he and Ernesto were trying to steal a car or some parts from a car when Ernesto was killed and that both he and Ernesto had fired shots.

## II. Sufficiency of the Evidence

After Appellant filed his brief, the Texas Court of Criminal Appeals held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard.[2] Thus, the *Jackson* standard, which is explained below, is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense

---

[2]*Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).

4

that the State is required to prove beyond a reasonable doubt."[3]   We therefore apply the *Jackson* standard to both of Appellant's sufficiency points.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4]   This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[5]   The trier of fact is the sole judge of the weight and credibility of the evidence.[6]   Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[7]   Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to

---

[3]*Id.*

[4]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[5]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

[6]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).

[7]*Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

the verdict."[8]   We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution.[9]  The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.[10] But the sufficiency of the evidence in a criminal case is not determined by a no-evidence standard.[11]

In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution."[12]

Appellant was charged by indictment with attempted capital murder in the course of robbery or of burglary of a motor vehicle.  The jury charge instructed the jury that they could convict him of attempted capital murder if they found him guilty as a principal or as a party.  Oddly, even though Appellant was not charged

---

[8]*Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).

[9]*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

[10]*Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

[11]*Butler v. State,* 769 S.W.2d 234, 239 (Tex. Crim. App. 1989), *overruled on other grounds by Geesa v. State,* 820 S.W.2d 154, 161 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State,* 28 S.W.3d 570, 571 (Tex. Crim. App. 2000).

[12]*Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

6

with the offense of criminal conspiracy under section 15.02 of the penal code, a second-degree offense in this case,[13] the jury was also instructed that they could convict Appellant of attempted capital murder if they found him guilty of criminal conspiracy, and the jury instruction tracked the language of section 15.02.[14] Section 15.02 of the penal code provides,

> a) A person commits criminal conspiracy if, with intent that a felony be committed:
>
>> (1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and
>>
>> (2) he or one or more of them performs an overt act in pursuance of the agreement.
>
> (b) An agreement constituting a conspiracy may be inferred from acts of the parties.
>
> (c) It is no defense to prosecution for criminal conspiracy that:
>
>> (1) one or more of the coconspirators is not criminally responsible for the object offense;
>>
>> (2) one or more of the coconspirators has been acquitted, so long as two or more coconspirators have not been acquitted;
>>
>> (3) one or more of the coconspirators has not been prosecuted or convicted, has been convicted of a different offense, or is immune from prosecution;
>>
>> (4) the actor belongs to a class of persons that by definition of the object offense is legally incapable of committing the object offense in an individual capacity; or

---

[13] *See* Tex. Penal Code Ann. § 15.02 (West 2011).

[14] *See id.*

(5) the object offense was actually committed.

(d) An offense under this section is one category lower than the most serious felony that is the object of the conspiracy, and if the most serious felony that is the object of the conspiracy is a state jail felony, the offense is a Class A misdemeanor.[15]

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given.[16] Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.[17] However, we may not affirm a conviction based on legal or factual grounds that were not submitted to the jury.[18] The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument.[19]

Appellant does not challenge the indictment, but he does challenge the sufficiency of the evidence to convict him.

---

[15]*Id.*

[16]*Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[17]*Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 515 (2009); *Malik,* 953 S.W.2d at 240.

[18]*Malik*, 953 S.W.2d at 238 n.3.

[19]*See Curry v. State*, 30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).

When the jury is authorized to convict on any one of several theories or methods of commission of the same offense (for example, two different statutory definitions of the same offense) and returns a general verdict of guilt, it does not matter that the evidence is insufficient to sustain one or more of the theories, so long as the evidence is sufficient to sustain conviction under at least one theory.[20]

In the case now before this court, however, Appellant was not charged with criminal conspiracy in the indictment, but the jury was charged that they must convict Appellant of attempted capital murder whether they found him guilty of attempted capital murder as a principal or as a party or they found he had entered into a conspiracy to commit capital murder.[21]  Specifically, the jury was charged to convict if they found Appellant had

> entered into a conspiracy with another to commit the felony offense of burglary of a motor vehicle and that on or about the 13th day of May, 1992, in Tarrant County, Texas, in an attempt to carry out this agreement, if any, Ernesto Ortega did then and there, with the specific intent to commit the offense of murder of James Newport, intentionally shoot a firearm at James Newport during the course of committing or attempting to commit burglary of a motor vehicle of James Newport, which amounted to more than mere preparation

---

[20]*Grissam v. State*, 267 S.W.3d 39, 41 (Tex. Crim. App. 2008); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003) (citing *Rabbani v. State*, 847 S.W.2d 555, 558–59 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993)); *see also Jefferson v. State*, 189 S.W.3d 305, 311–13 (Tex. Crim. App.) (analyzing whether a statute that does not require a unanimous verdict as to different manner and means of committing the same offense violates due process), *cert. denied*, 549 U.S. 957 (2006).

[21]*See* Tex. Penal Code Ann. § 15.02.

9

that tended but failed to effect the commission of the offense intended and that such offense was committed in furtherance of the unlawful purpose to commit burglary and was an offense that should have been anticipated as a result of the carrying out of the agreement.

The defendant in this case was Appellant, not Ernesto. There was a similar instruction with robbery as the subject of the conspiracy. The jury was instructed in the conspiracy instruction that they must find an agreement. An agreement is not an element of attempted capital murder, and the State is not required to prove an agreement to prove a defendant's guilt of attempted capital murder, either as a principal or as a party. To instruct the jury that an agreement is a necessary element of the offense either improperly increases the State's burden or allows the jury to convict Appellant of conspiracy, an offense of which he was not accused and for which he was not indicted.

Appellant argues that the evidence is insufficient to prove attempted capital murder, as opposed to robbery or burglary, because there is no evidence that he knew that Ernesto had a gun and no evidence that Appellant fired any shots. Appellant apparently argues that there is no evidence of an agreement or meeting of the minds regarding using a firearm and no evidence that he, as opposed to Ernesto, fired a weapon. Although the trial court charged the jury to convict under the conspiracy statute, which requires an agreement,[22] an agreement is not an element of capital murder, attempted capital murder,

---

[22] *See id.* § 15.02(a).

10

burglary, or robbery. There is no evidence of an agreement between Ernesto and Appellant. There is evidence that both participated in entering the vehicle and that one of the brothers attempted to get the vehicle running. There is evidence that Appellant touched the interior dome light cover of the vehicle. There is evidence that Ernesto had the tools to enter with him. But the State was never required to prove an agreement to prove Appellant guilty of attempted capital murder.[23]

The State was required to prove "the specific intent to commit the offense of murder,"[24] but not an agreement, in order to prove attempted capital murder. That intent may be inferred from any act on the part of Appellant, acting with intent to promote or assist the commission of attempted capital murder, or to solicit, encourage, direct, aid, or attempt Ernesto to commit capital murder. Here, there is evidence that Appellant participated in robbery and burglary and that in the course of committing those offenses, he fired a firearm at Newport because Newport testified that he saw muzzle flashes not only from Ernesto's location but also from Appellant's location. This evidence is sufficient to prove those elements of the offense despite the absence of evidence of an agreement.

---

[23] *See Pereira v. United States*, 347 U.S. 1, 11, 74 S. Ct. 358, 364 (1954); *Ex parte Brosky*, 863 S.W.2d 783, 784, 788 (Tex. App.—Fort Worth 1993, no pet.).

[24] *See* Tex. Penal Code Ann. § 15.01 (West 2011) (defining criminal attempt), *id.* § 19.03 (defining capital murder).

11

Appellant was not charged by indictment with conspiracy, there was no direct evidence of conspiracy, and that instruction should not have been submitted to the jury. But the correct jury charge would have allowed the jury to convict only of the offense alleged in the indictment and properly proved by the evidence—attempted capital murder, or a lesser included offense.[25] Conspiracy is not a lesser included offense because it requires proof of an additional element: an agreement. We therefore hold that, under the appropriate standard, the evidence was sufficient to support Appellant's conviction of attempted capital murder as actually alleged in the indictment. Because the jury returned a general verdict, we overrule Appellant's points.

## III. Conclusion

Having overruled Appellant's points, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 9, 2011

---

[25] *See Malik,* 953 S.W.2d at 240.

12